**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ALAN VARNADOE, | ) | |
| | ) | Civil Action File No._____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| GOLDEN STATE FOODS CORP., | ) | |
| | ) | |
| Defendant | ) | |

## COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

Plaintiff Alan Varnadoe ("Plaintiff" or "Varnadoe") files this Complaint for
Equitable Relief and Damages against Golden State Foods Corp. ("Defendant" or
"GSF") showing the Court the following:

### INTRODUCTION

This action arises out of Defendant's discriminatory and retaliatory
termination of Varnadoe based on his disability and request for a reasonable
accomodation. Defendant GSF is an international for-profit business that provides
supplies to the food service industry. Plaintiff Varnadoe provided 26 years of service
to GSF, receiving a merit bonus as recently as February 2020. Varnadoe was also a
qualified individual with a disability, suffering from Chronic Obstructive Pulmonary
Disease ("COPD"), a condition which compromises the respiratory system and

places him at an elevated risk from the coronavirus. Varnadoe also has a record of being disabled.

In mid-March 2020, GSF directed Varnadoe and other employees at its plant in Conyers, Georgia to work remotely due to the coronavirus. A month later, Varnadoe's supervisors told him to return to work in person. Varnadoe requested an accommodation of continuing to work remotely, because his disability increased his risk of serious illness from the coronavirus. Four days after Varnadoe requested his accommodation, GSF terminated him. GSF claimed it terminated Varnadoe as part of broad coronavirus-related job cuts, but other members of Varnadoe's team who had been working remotely were not eliminated, and GSF did not make significant job reductions at Varnadoe's worksite.

Varnadoe brings claims of disabilility discrimination, failure to accommodate, and retaliation against GSF under the Americans with Disabilities Act Amendments Act of 2008 ("ADA"), 42 U.S.C. § 12101 *et seq*. He seeks declaratory and injunctive relief, damages, and his attorneys' fees and costs.

## Jurisdiction and Venue

1.     This Court has jurisdiction under 42 U.S.C. § 12101 *et seq.*, 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

2.     This district and division are proper venues under 28 U.S.C. § 1391 because Defendant GSF conducts business in this district and division, and because Defendant committed its actions giving rise to this case within the Northern District of Georgia.

## Exhaustion of Administrative Remedies

3.     On June 6, 2020, Varnadoe filed a charge of discrimination – Charge No. 410-2020-06730 – with the Equal Employment Opportunity Commission within 180 days of the occurrence of the acts of which he complains.

4.     On January 14, 2021, Varnadoe received a Notice of Right to Sue.

5.     Varnadoe brings this suit within ninety (90) days of the receipt of his Notice of Right to Sue.

## The Parties

6.     Varnadoe is a citizen of the United States and a resident of the State of Georgia.  Varnadoe submits himself to the jurisdiction of this Court.

7.     Varnadoe is and, at all times relevant hereto was, an individual with a disability as that term is defined by 42 U.S.C. § 12102(1).

8.     Varnadoe is a person with a disability because he has an actual physical impairment – COPD  – which causes substantial limitations in one or more major

life activities, because he has a record of impairment, and because GSF regarded him as having an impairment.

9.    Varnadoe was, at all times material to this Complaint, capable of performing the essential functions of his job with or without an accommodation.

10.    Defendant GSF is a foreign profit organization that provides supplies to the foodservice industry.

11.    GSF is registered to do business in Georgia and conducts business in this District and venue.

12.    GSF was, at all times material to this Complaint, an employer engaged in commerce or in an industry affecting commerce within the meaning of the ADA and has employed more than 15 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.

13.    At all times relevant to this Complaint, GSF was Varnadoe's employer, and Varnadoe was GSF's employee, within the meaning of the ADA, 42 U.S.C. §12111(4) and (5).

14.    GSF may be served with summons and a copy of this Complaint by delivering process to its registered agent, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

-4-

## Statement of Facts

15.     Defendant GSF, at all times material to this Complaint, employed several thousand fulltime employees.

16.     In 2020, GSF employed over 5,000 fulltime employees.

17.     During the year 2019, GSF earned revenues of approximately $6.9 billion.

18.     Varnadoe began working for GSF in June 1994.

19.     Since beginning his career with GSF, Varnadoe was promoted multiple times, with his last promotion being to the position of Scheduler at GSF's plant in Conyers, Georgia.

20.     During the period relevant to this Complaint, Varnadoe's supervisors were Supply Chain Director Dawn Warner and Demand Planning Manager Tammy Rosser.

21.     In February 2020, Varnadoe received a merit-based bonus.

22.     At all times material to this Complaint, Varnadoe suffered from COPD.

23.     COPD substantially limits Varnadoe in several major life activities, including breathing and walking, because, *inter alia,* COPD causes Varnadoe severe shortness of breath during even minor physical exertion such as walking across a

room.

24.    Additional major life activities impacted by Varnadoe's COPD include his respiratory and circulatory functions.

25.    Varnadoe was a qualified individual with a disability in that he had successfully performed his job without accommodation for years prior to the mid-March 2020 events pled below..

26.    During 2020, the novel coronavirus caused a number of shut-downs throughout the United States.

27.    COVID-19, the illness caused by the novel coronavirus, frequently causes severe respiratory problems, among other health problems, and it has killed over 500,000 Americans as of the filing of this Complaint.

28.    According to the Centers for Disease Control and Prevention, people with COPD are known to be at increased risk of severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

29.    In mid-March 2020, as a response to COVID-19, GSF directed many of its Conyers-based employees, including Varnadoe and at least three other members of his department, to work from home to the maximum extent possible.

30.     Varnadoe and other employees complied with this directive.

31.     GSF had already provided Varnadoe with a company laptop, and Varnadoe was accustomed to working outside of normal work hours as a Scheduler, because working off-hours is a normal part of that job.

32.     On or about April 10, 2020, Warner and Rosser directed Varnadoe and three other members of his department to return to work in-person at the Conyers plant on April 14, 2020.

33.     By this time, multiple employees at GSF's Conyers plant were known or suspected to have been infected with the coronavirus.

34.     On or about April 13, 2020, Varnadoe called Warner.

35.     Varnadoe told Warner that at his age (66) and with his underlying health condition (COPD), COVID-19 posed an elevated risk to him, and Varnadoe asked if he could continue working remotely as an accommodation for his disability.

36.     Varnadoe also reminded Warner that he had recovered from a battle with lung cancer several years prior.

37.     Prior to these conversations, Warner and others in GSF's management knew of Varnadoe's disability because he had discussed it with them.

38.     Though Varnadoe requested the accommodation of continuing to work

remotely, he told Warner he would return to working in person if Defendant deemed it necessary.

39.    Warner told Varnadoe to continue working remotely until she could speak with Human Resources about his request.

40.    Varnadoe complied with Warner's directive.

41.    On or about April 17, 2020, Warner called Varnadoe. Defendant's Group Vice President Jason Slipsager and Defendant's Senior Plant Human Resources Manager Lamar Torrence joined the call.

42.    They told Varnadoe he was laid off effective immediately as part of broader job reductions related to COVID-19. .

43.    Defendant did not lay off the other three members of Varnadoe's department who had also worked remotely.

44.    Upon information and belief, these department-mates of Varnadoe were not qualified individuals with a disability under the ADA, and none of them requested disability-related accommodations to continue working from home due to elevated coronavirus risk.

45.    Defendant made fewer than ten job elimiantions among positions at or above Varnadoe's level at the Conyers plant at the time Defendant told Varnadoe he

was laid off.

46.     In July 2020, just three months after allegedly laying off Varnadoe due to claimed broad coronavirus-related job cuts, GSF announced the opening of a new 7,000 square-foot Innovation Center in Conyers that will develop hundreds of new products.    https://goldenstatefoods.com/news/new-gsf-innovation-center-opens-at-conyers-liquid-products-facility/.

47.     After eliminating Varnadoe, GSF has advertised the availability of, and hired for, multiple jobs at its Conyers facility including managerial positions at levels comparable to Varnadoe's former position.

48.     GSF acted willfully against Varnadoe and his federally protected rights in denying him a reasonable accommodation for his disability, and in terminating him because he is a qualified person with a disability and/or in retaliation for his accommodation request.

49.     Additionally, and in the alternative, GSF acted with reckless disregard for Varnadoe and his federally protected rights.

50.     GSF's above-pled actions caused Varnadoe damages including, but not limited to, lost compensation and benefits, and emotional damages.

## COUNT I
## <u>Violation of ADA – Regarded as Disabled</u>

51.     Varnadoe incorporates by reference all the preceding paragraphs of the Complaint.

52.     At all times relevant hereto, GSF has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the Americans with Disabilities Amendments Act.

53.     At all times relevant hereto, Varnadoe was an individual with a disability as defined under the ADA, 42 U.S.C. § 12102 (1)(C) because GSF regarded him as a person with an impairment as defined by the Act.

54.     Moreover, at all times relevant hereto, Varnadoe has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of the job.

55.     GSF terminated Varnadoe because it regarded him as disabled.

56.     GSF's actions violated Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

57.     GSF's above-pled actions caused and continue to cause Varnadoe to suffer lost compensation and other employment benefits.

58.     GSF's above-pled actions caused and continue to cause Varnadoe to

suffer emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

59.    GSF acted intentionally and willfully in violation of Varnadoe's federally protected rights, entitling Varnadoe to punitive damages.

60.    Additionally and in the alternative, GSF acted with reckless disregard toward Varnadoe and his federal rights, also entitling Varnadoe to punitive damages.

**COUNT II**
**Actual Discrimination and Failure to Accommodate in Violation of ADA**

61.    Varnadoe incorporates by reference all the preceding paragraphs of the Complaint.

62.    At all times relevant hereto, GSF has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the Americans with Disabilities Amendments Act.

63.    At all times relevant hereto, Varnadoe was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102 (1)(A) and/or 42 U.S.C. § 12102(B).

64.    GSF was aware of Varnadoe's disabilities and history and record of disability.

65.    At all times relevant hereto, Varnadoe has been a qualified individual

with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of his job.

66.     Varnadoe's disabilities substantially limit one or more major life activities.

67.     Varnadoe requested a reasonable accommodation from GSF relating to his disability: the ability to work remotely as opposed to working in a plant with suspected cases of COVID-19 as, due to his COPD, he was at elevated risk from the COVID-19 virus.

68.     Varnadoe's accommodation request was reasonable because  because there was a track record establishing that Varnadoe and others in his department and facility could adequately perform their jobs remotely.

69.     GSF failed to accommodate Varnadoe's disability and failed to engage in an interactive process with Varnadoe regarding his accommodation request.

70.     GSF terminated Varnadoe's employment because of his disability and/or to deny him his requested accommodation.

71.     GSF's actions amount to a violation of Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability and requires reasonable accommodation for disabilities.

72.     GSF's above-pled actions caused and continue to cause Varnadoe to suffer lost compensation and other employment benefits.

73.     GSF's above-pled actions caused and continue to cause Varnadoe to suffer emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

74.     GSF acted intentionally and willfully in violation of Varnadoe's federally protected rights, entitling Varnadoe to punitive damages.

75.     Additionally and in the alternative, GSF acted with reckless disregard toward Varnadoe and his federal rights, also entitling Varnadoe to punitive damages.

**COUNT III**
**Retaliation in Violation of the ADA**

76.     Varnadoe incorporates by reference all the preceding paragraphs of the Complaint.

77.     At all times relevant hereto, GSF has been subject to the requirements of Title I of the ADA.

78.     At all times relevant hereto, Varnadoe was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102 (1)(A) and/or (B) and/or (C).

79.     Varnadoe engaged in protected activity under the ADA when he requested an accommodation of continuing to work remotely to accommodate his

COPD.

80.     GSF terminated Varnadoe's employment in retaliation for requesting an accommodation in violation of the ADA.

81.     GSF's above-pled actions caused and continue to cause Varnadoe to suffer lost compensation and other employment benefits.

82.     GSF's above-pled actions caused and continue to cause Varnadoe to suffer emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

83.     GSF acted intentionally and willfully in violation of Varnadoe's federally protected rights, entitling Varnadoe to punitive damages.

84.     Additionally and in the alternative, GSF acted with reckless disregard toward Varnadoe and his federal rights, also entitling Varnadoe to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and that the following relief be granted:

(a)     Issue a declaratory judgment that GSF's acts, policies, practices, and procedures complained of herein violated Varnadoe's rights as secured under the ADA;

-14-

(b)     Grant to Varnadoe judgment in his favor and against GSF under all counts of this Complaint;

(c)     Order GSF to make Varnadoe whole by providing for his out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of GSF's unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(d)     Order that Varnadoe be reinstated or, in the alternative, be awarded front pay;

(e)     Order GSF to compensate Varnadoe for mental and emotional damages suffered as a result of GSF's unlawful and discriminatory acts;

(f)     Grant to Varnadoe punitive damages for GSF's willful and intentional violations of the ADA as provided by 42 U.S.C. § 12117(a)(as amended)

(g)     Grant to Varnadoe a jury trial on all issues so triable;

(h)     Grant to Varnadoe his reasonable attorneys' fees and reasonable expert witness fees together with any and all other costs associated with this action as provided by the ADA, 42 U.S.C. § 12205; and

-15-

(i)     Grant such additional monetary and equitable relief as the Court

deems proper and just.

Respectfully submitted this 8th day of March 2021,

**LEGARE, ATTWOOD & WOLFE, LLC**

*s/ Steven E. Wolfe*
Steven E. Wolfe
Georgia Bar No. 142441
Marissa R. Torgerson
Georgia Bar No. 848356

125 Clairemont Avenue, Suite 380
Decatur, Georgia 30030
Tel: (470) 823-4000 | Fax: (470) 201-1212
sewolfe@law-llc.com
mrtorgerson@law-llc.com

Counsel for Plaintiff